**FILED ELECTRONICALLY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                                :

LEON SEGEN, derivatively on behalf of       :
Covansys Corporation,                            :   05 CV 3509 (RWS)
             Plaintiff,                                 :   **ECF CASE**
      -v-                                                    :
CDR-COOKIE ACQUISITION, L.L.C.,         :
CLAYTON, DUBILIER, & RICE FUND VI    :
LIMITED PARTNERSHIP, CD&R ASSOCIATES :
VI LIMITED PARTNERSHIP, CD&R           :
INVESTMENT ASSOCIATES VI, INC., and    :
COVANSYS CORPORATION,                  :
             Defendants.                        :
------------------------------------------------------------- x


## THE CDR DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT

 

Donald W. Hawthorne (DH-2057)
Stephen Chahn Lee (SL-6999)
Tatyana A. Trakht (TT-5677)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6468

Attorneys for the Defendants CDR-Cookie
Acquisition, L.L.C., Clayton, Dubilier &
Rice Fund VI Limited Partnership, CD&R
Associates VI Limited Partnership, and
CD&R Investment Associates VI, Inc.
("the CDR Defendants")

Dated: New York, New York
       August 11, 2005

**TABLE OF CONTENTS**

                                                                        **Page**

I.    Under The Facts Alleged, the CDR Defendants Earned No Short-Swing Profits ........... 1

       A.    There Is No "Control Premium Exception" to Rule 16b-6(c)(2) ............................ 1

       B.    There Is No "Actual Price" or "Private Transaction" Exception to Rule 16b-6(c)(2) ........................................................................................................ 3

       C.    There Is No Basis for Declaring Rule 16b-6(c)(2) Invalid ..................................... 4

II.    The Transaction Was Exempt From Short-Swing Liability Because, Under The Facts Alleged,  It Took Place Between A Deputized Director And The Issuer ............... 5

III.    The Transaction Was Exempt From Short-Swing Liability Because It Was A Reclassification ................................................................................................................ 8

IV.    A Single Transaction Cannot  Give Rise To Short-Swing Liability ............................... 9

Conclusion ................................................................................................................................. 1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blau v. Lehman,*
　368 U.S. 403 (1962) .................................................................................................... 8

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
　467 U.S. 837 (1984) ................................................................................................. 4, 5

*Colan v. Cutler-Hammer, Inc.,*
　Fed. Sec. L. Rep. (CCH) ¶ 92,806 (N.D. Ill. 1986), *aff'd on other grounds, 812 F.2d 357 (7th Cir. 1987)* ..................................................................................................... 8

*Dreiling v. Am. Express Travel Related Servs. Co.,*
　351 F. Supp. 2d 1077 (W.D. Wash. 2004), *appeal docketed*, No. 04-35715 (9th Cir. Aug. 2004) ................................................................................................................. 6

*Feder v. Martin Marietta Corp.,*
　406 F.2d 260 (2d Cir. 1969), *cert. denied*, 396 U.S. 1036 (1970) ................................. 8

*Foremost-McKesson, Inc. v. Provident Securities Co.,*
　423 U.S. 232 (1976) .................................................................................................... 4

*Gollust v. Mendell,*
　501 U.S. 115 (1991) .................................................................................................... 4

*Gryl v. Shire Pharm. Group PLC,*
　298 F.3d 136 (2d Cir. 2002) ....................................................................................... 6

*Levy v. Sterling Holding Co.,*
　314 F.3d 106 (3d Cir. 2002), *cert. denied*, 540 U.S. 947 (2003) .................................. 6

*Lewis v. Dekcraft Corp.,*
　No. 69 Civ. 2982, 1974 U.S. Dist. Lexis 7862, Fed. Sec. L. Rep. (CCH) ¶ 94,620 (S.D.N.Y. June 27, 1974) ........................................................................................ 7, 8

*Newmark v. RKO General, Inc.,*
　425 F.2d 348 (2d Cir. 1970) ....................................................................................... 3

*Portnoy v. Seligman & Latz, Inc.,*
　516 F. Supp. 1188 (S.D.N.Y. 1981) .......................................................................... 10

*Rattner v. Lehman,*
　193 F.2d 564 (2d Cir. 1952) ....................................................................................... 8

*Schur v. Salzman,*
  365 F. Supp. 725 (S.D.N.Y. 1973) ............................................................................... 3

*Segen v. Westcliff Capital Mgmt., LLC,*
  299 F. Supp. 2d 262 (S.D.N.Y. 2004) .......................................................................... 4

## FEDERAL STATUTES, RULES AND REGULATIONS

17 C.F.R. § 240.16b-3 .......................................................................................................... 5

17 C.F.R. § 240.16b-6(c)(2) ................................................................................................. 1

17 C.F.R. § 240.16b-7 .......................................................................................................... 9

15 U.S.C. § 78p(b) ............................................................................................................ 3, 4

## SEC RELEASES AND AMICUS BRIEFS

Brief of the SEC amicus curiae, *Dreiling v. Am. Express Travel Related Servs. Co.,*
  351 F. Supp. 2d 1077 (9th Cir. 2005) (No. 04-35715),
  http://www.sec.gov/litigation/briefs/dreiling040505.pdf ............................................. 6

*Ownership Reports and Trading by Officers, Directors and Principal Stockholders,*
  Exchange Act Release No. 26,333, 53 Fed. Reg. 49,997 (Dec. 13, 1988) ................ 2, 5

*Ownership Reports and Trading By Officers, Directors and Principal Security
  Holders*, Exchange Act Release No. 28,869, 56 Fed. Reg. 7242 (Feb. 8, 1991) ............. 5

*Ownership Reports and Trading By Officers, Directors and Principal Security
  Holders*, Exchange Act Release No. 37,260, 61 Fed. Reg. 30,376 (May 31, 1996) ... 6, 7

*Ownership Reports and Trading By Officers, Directors and Principal Security
  Holders*, Exchange Act Release No. 52,202 (Aug. 3, 2005) ....................................... 6, 8

## TREATISES

Romeo & Dye, *Section 16 Treatise and Reporting Guide* (2d ed. 2004) ............................ 9

The statute and regulations governing short-swing liability provide bright line rules intended to be mechanically applied. As his brief makes clear, Plaintiff's claims depend on inventing arbitrary, non-existent exceptions to these rules or ignoring them altogether. Applying the rules as they are written, the CDR Defendants' transaction: (i) cannot give rise to short-swing profits; (ii) is exempt from short-swing liability because it involves a transaction between the issuer and a deputized director; (iii) is an exempt share reclassification; and (iv) involves only a single transaction – each of which requires dismissal of the Complaint.

**I.  UNDER THE FACTS ALLEGED,
THE CDR DEFENDANTS EARNED NO SHORT-SWING PROFITS**

In their opening brief, the CDR Defendants demonstrated that under the applicable rule, 17 C.F.R. § 240.16b-6(c)(2), there was no short-swing profit on the transaction at issue. The rule limits short-swing profits in a transaction involving non-identical derivative securities to "the difference in price of the underlying security." In the case of a simultaneous exchange of securities, as occurred here, that difference is necessarily zero. (Def. Br. 7-9). Plaintiff cannot seriously contest that this rule applies. Instead, he concocts an exception to the rule by misinterpreting case law that preceded the rule's enactment, and attempts a frontal assault on the rule itself in a rehash of arguments that were rejected by another court in this circuit barely a year and a half ago.

**A.  There Is No "Control Premium Exception" to Rule 16b-6(c)(2)**

Rule 16b-6(c)(2) provides that "*short-swing profits* in transactions involving the purchase and sale . . . of . . . derivative securities and underlying securities shall not exceed the difference in price of the underlying security." Plaintiff wants to re-write the rule to say: "short-swing profits *other than those deriving from control premiums*." (Op. Br. 11-14).

That textual insertion is contrary to the plain meaning of the rule, unsupported by a single authority, inconsistent with the purpose of the statute, and contradicted by the very cases that Plaintiff cites.

The short answer to Plaintiff is that if the SEC had wanted to include the exception to the rule that Plaintiff proposes, it could have done so.  Instead, the rule simply applies to the "profits" attributable to a transaction without further qualification – which would include profits arising from market movements, interest rate shifts, changes in the volatility of the underlying securities, control premiums, or any other source.  This bright-line rule is consistent with the purpose of Rule 16b-6(c)(2) to avoid "turning every case involving derivative instruments into a battle of experts over competing models of option valuation" by providing "benchmarks or rules of thumb" for determining short-swing profits in such transactions.  *Ownership Reports and Trading By Officers, Directors and Principal Stockholders*, Exchange Act Release No. 26,333, 53 Fed. Reg. 49,997, 50,009 (Dec. 13, 1988).  That purpose would not be served by requiring such a battle of experts every time a control premium was allegedly involved in an exchange of derivative securities.[1]

Not one case cited by Plaintiff hints that Rule 16b-6(c)(2) was intended to exclude control premiums – nor could they, since all of the cases cited in Plaintiff's brief on this issue predate the enactment of the rule in 1991.  (Op. Br. 12-13).  In fact, the cases cited by Plaintiff support that when Section 16(b) and the rules enacted pursuant to it – including Rule 16b-6(c)(2) – refer to the "profits" recoverable on short-swing transactions, this term is intended to

---

[1] That such a battle of experts would be involved here is clear from Plaintiff's brief which, far from endorsing any single valuation, states that Plaintiff will seek to prove the value of the "control premium" at trial. (Op. Br. 14, n.8.)

encompass any profit realized on a transaction, including any profit attributable to a control premium.  For example, in *Schur v. Salzman*, 365 F. Supp. 725 (S.D.N.Y. 1973), the defendant sought to exclude the portion of a purchase price attributable to a control premium from the calculation of short-swing profits.  The court rejected the defendant's attempt to "fragmentize the purchase price" as counter to the "explicit language and clear purpose of the statute" to surrender "'***any profit realized***' on the proscribed transactions."  *Id.* at 730 (citing 15 U.S.C. § 78p(b)(1970)) (emphasis added).  There is nothing in the text, history or meaning of Rule 16b-6(c)(2) to suggest that when the SEC provided for a cap on "short-swing ***profits***" in transactions including derivatives, it intended on this one occasion to change the meaning of "profit" used throughout the short-swing statutes and regulations to exclude profits on control premiums.  *See, e.g., Newmark v. RKO General, Inc.*, 425 F.2d 348, 357 (2d Cir. 1970) (including control premium in calculation of short-swing "profits").

**B.  There Is No "Actual Price" or "Private Transaction" Exception to Rule 16b-6(c)(2)**

In a fall-back position, Plaintiff claims either that Rule 16b-6(c)(2) was intended to apply to "actual" prices, rather than market prices, or that actual prices apply in private transactions, if not in public ones.  (Op. Br. 16).  Again there is no support, and Plaintiff cites none, for distinguishing between public and private market transactions in the application of this rule.  Plaintiff's concocted distinction also makes no sense: it is no easier – and may often be considerably more difficult – to value non-identical derivative securities exchanged in a private transaction than those traded on a public market.

In any case, for reasons discussed in Defendants' opening brief (Def. Br. 10-14), Plaintiff's contention that when the SEC capped short-swing derivative profits at "the difference in the price of the underlying security," it really intended to mean "the difference in

3

price between the underlying security and the actual value of the derivative," is contradicted by the text of the rule, all relevant caselaw and commentary, SEC releases, and the underlying purposes of the rule.  Plaintiff's only response is to label Judge Pauley's holding in *Segen v. Westcliff Capital Management., LLC,* 299 F. Supp. 2d 262, 269 (S.D.N.Y. 2004), which ruled against Plaintiff's counsel on this very point, "illogical," and to claim erroneously that there was "no support" for Judge Pauley's views and that Section 16(b) should be read "expansively." (Op. Br. 15).  In fact, as the Supreme Court has said, since Section 16(b) imposes liability without fault, the rule operates only within "narrowly drawn limits." *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251 (1976); *see also Gollust v. Mendell*, 501 U.S. 115, 122 (1991) ("we have been reluctant to exceed a literal, 'mechanical' application of the statutory text in determining who may be subject to liability"). Those narrow limits do not include the expansive theory of liability that Plaintiff advocates. This Court should follow Judge Pauley and reject Plaintiff's "novel" and utterly unsupported position.  *Segen,* 299 F. Supp. 2d at 269.

**C.      There Is No Basis for Declaring Rule 16b-6(c)(2) Invalid**

Finally, Plaintiff suggests, with no real analysis, the frivolous proposition that Rule 16b-6(c)(2) exceeded the SEC's rule-making authority.  (Op. Br. 16-17).  Section 16(b) expressly confers on the SEC the authority to enact rules or regulations exempting transactions from the reach of the statute "as not comprehended within the purpose" of the statute.  15 U.S.C. § 78p(b) (2005).  Where, as here, "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling

weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).[2]

In the years of proposals and comment leading to the enactment of Rule 16b-6(c)(2), the Commission expressly considered that adopting "benchmarks or rules of thumb" would best balance "the interests of precision" and "the costs of computation," and that "[t]he interests of justice and Congress' purpose in adopting section 16(b) will not be served by turning every case involving derivative instruments into a battle of experts." Exchange Act Release No. 26,333, 53 Fed. Reg. 49,997, 50,009.  Plaintiff does not, and could not, seriously attempt to show that the balance of the interests in precision and computation cost reflected in Rule 16b-6(c)(2) is arbitrary, capricious, or manifestly contrary to the purposes of Section 16(b).

## II. THE TRANSACTION WAS EXEMPT FROM SHORT-SWING LIABILITY BECAUSE, UNDER THE FACTS ALLEGED, IT TOOK PLACE BETWEEN A DEPUTIZED DIRECTOR AND THE ISSUER

The transaction at issue in this case was fully disclosed to Covansys' shareholders and approved by them, by the company's Board of Directors, and by an independent committee of the Board.  Either shareholder or Board approval, coupled with the allegations that the CDR Defendants "controlled" Covansys and were responsible for appointing three directors to its Board, suffices to entitle the CDR Defendants to the exemption from short-swing liability for transactions between an issuer and a director under Rule 16(b)-3's well-established

---

[2] No court has struck down any aspect of the rules enacted by the SEC in 1991 to cover transactions involving derivative securities.  The two cases cited by Plaintiff (Op. Br. 16-17) are half a century old, have nothing to do with Rule 16(b)-6(c)(2), and have been rejected by the SEC as based on an outdated understanding of derivatives.  *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Exchange Act Release No. 28,869, 56 Fed. Reg. 7242, 7250-51 (Feb. 8, 1991).

"deputized director" doctrine. (*See* Def. Br. 14-16). As the SEC has said, such transactions with the issuer "do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions," since "where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction . . . any profit obtained is not at the expense of uninformed shareholders and other market participants." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Exchange Act Release No. 37,260, 61 Fed. Reg. 30,376, 30,377 at n. 16 (May 31, 1996).

Having no real answer to this point, Plaintiff misstates the law, claiming that the deputization doctrine "does not serve to allow an exemption to be imputed to the principal" (Op. Br. 19) – a proposition contradicted both by the only case he cites on point, *Dreiling v. American Express Travel Related Services Co.,* 351 F. Supp. 2d 1077, 1090 (W.D. Wash. 2004), *appeal docketed*, No. 04-35715 (9th Cir. Aug. 2004), and by the SEC's interpretation of its regulation in the amicus brief filed in that case, to which a court in this Circuit "must defer" unless it is "plainly erroneous or inconsistent with the regulations."[3] *Gryl v. Shire Pharm. Group PLC*, 298 F.3d 136, 145 (2d Cir. 2002); *see* Brief of the SEC amicus curiae, *Dreiling v. Am. Express Travel Related Servs. Co.,* 351 F. Supp. 2d 1077 (9th Cir. 2005) (No. 04-35715), http://www.sec.gov/litigation/briefs/dreiling040505.pdf.

---

[3] The SEC has issued a Final Rule clarifying that *Levy v. Sterling Holding Co.*, 314 F.3d 106 (3d Cir. 2002), *cert. denied*, 540 U.S. 947 (2003), on which Plaintiff relies (Op. Br. n.14), misinterpreted Rule 16(b)-3 and that exemptions under Rule 16(b)-3(d) are not limited to transactions with compensation-related functions. *Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Exchange Act Release No. 52,202 (Aug. 3, 2005). Because this rule is a clarification of pre-existing regulations, it has retroactive effect and applies to the transaction at issue in this case. *See id.*

Plaintiff also flatly mischaracterizes *Dreiling* as "implicitly" holding that exemption under Rule 16(b)-3 is available only to a deputized director that holds less than 10% of the issuer's shares. (Op. Br. 20-21). This invented "shareholder" exception to Rule 16(b)-3 is nowhere present in *Dreiling* or the SEC's amicus brief, and the SEC has directly rejected it, stating that, while the exemption is not available to *every* 10% holder, "Rule 16b-3 is available to [a holder of ten percent or more of the issuer's shares] . . . who is also subject to Section 16 by virtue of being an officer or director with respect to transactions with the issuer." Exchange Act Release No. 37,260, 61 Fed. Reg. 30,376, 30,379 at n. 42. As deputized directors, the CDR Defendants fall within the rule.

Finally, Plaintiff portrays the CDR Defendants as claiming that every 10% holder is entitled to exemption under Rule 16(b)-3 – a claim never made in the CDR Defendants' papers – and then spends pages knocking down this straw man. (Op. Br. 3, 18-21). The CDR Defendants' entitlement to Rule 16(b)-3's exemption is based on the allegations of Plaintiff's Complaint: that the CDR Defendants controlled Covansys; owned 32.9% of its shares; and, in connection with their investment, obtained the power, which they exercised, to appoint three directors to Covansys' board. Compl. ¶¶ 11-12. While determination of deputization requires analysis of facts, the facts alleged in Plaintiff's Complaint, which are undisputed for the purposes of this motion, are sufficient to establish that the CDR Defendants are entitled to the exemption. For example, in *Lewis v. Dekcraft Corp.*, No. 69 Civ. 2982, 1974 U.S. Dist. Lexis 7862, Fed. Sec. L. Rep. (CCH) ¶ 94,620 (S.D.N.Y. June 27, 1974), the Court held that deputization was established based on the undisputed facts that the deputizing company had acquired 36% of the issuer, thereby gaining control, and pursuant to that transaction gained and exercised the right to appoint four members to the issuer's board. The *Dekcraft* court

concluded that such facts were "far more compelling than the facts which led the Court of Appeals in *Feder [v. Martin Marietta Corp.*, 406 F.2d 260, 263 (2d Cir. 1969)] to conclude that the district court's finding of no deputization was 'clearly erroneous.'"[4] *Id.* at *8.

### III. THE TRANSACTION WAS EXEMPT FROM SHORT-SWING LIABILITY BECAUSE IT WAS A RECLASSIFICATION

In response to the CDR Defendants' showing in their opening brief that the transaction is also entitled to an exemption from short-swing liability under Rule 16b-7 because it involved a reclassification of Covansys' shares, Plaintiff resorts to his familiar tactics of misstating the applicable rule and inventing non-existent exceptions to it. (*See* Def. Br. 16-18; Op. Br. 22-24).

The SEC has laid to rest any possible debate about the availability of an exception under Rule 16b-7 for reclassifications in its recently issued rule – over-ruling *Levy v. Sterling*, the case on which Plaintiff primarily relies – which clarifies that, for any transaction entered on or after May 1, 1991, reclassifications are entitled to exemption from short-swing liability to the same extent as transactions pursuant to mergers or consolidations. Exchange Act Release No. 52,202. This rule does not, as Plaintiff claims, apply only to transactions "involving two or more companies." (Op. Br. 23). Reclassifications generally involve only one company, and the requirements of Rule 16b-7 are satisfied as long as the issuer, prior to the reclassification, owned at least 85% of the assets of the entities involved in the

---

[4] By contrast, in the cases cited by Plaintiff in which deputization was not found, the only relevant facts were that an officer of a corporation or a member of a partnership happened to be sitting on an issuer's board at the time the corporation or partnership acquired the issuer's shares. *See Blau v. Lehman*, 368 U.S. 403, 407-410 (1962); *Rattner v. Lehman*, 193 F.2d 564, 566 (2d Cir. 1952); *Colan v. Cutler-Hammer, Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 92,806 at 93,947, n.9 (N.D. Ill. 1986), *aff'd on other grounds*, 812 F.2d 357 (7th Cir. 1987).

reclassification – a condition that was met on the facts alleged in the Complaint.  17 C.F.R. § 240.16b-7 (2005).  The rule also includes no exception for the circumstance in which a class of shares involved in a reclassification is owned by a sole shareholder, as Plaintiff claims without support.  (Op. Br. 22).

Plaintiff is also incorrect that "the rule has no applicability to a transaction involving cash consideration."  (Op. Br. 24).  As a leading commentator has stated, "it has been held that a right to receive cash instead of securities will not affect the availability of the exception."  Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 13.05, 1162 (2d ed. 2004) (collecting citations).  Finally, there is no basis for Plaintiff's claim that it would be a "simple matter for any insider to structure any sale to the company as a 'reclassification.'" (Op. Br. 23).  A reclassification, which generally requires Board approval, must be applied to an entire share class, so that the same terms are extended to all holders of that class of shares; it is the rare case (as occurred here) that an insider happens to be the only holder of an entire class of stock, and even in that case, an insider transaction cannot be pursuant to a reclassification unless it involves all the insider's stock in that share class.

### IV.    A SINGLE TRANSACTION CANNOT GIVE RISE TO SHORT-SWING LIABILITY

The CDR Defendants demonstrated in their opening brief that the transaction at issue could not give rise to short-swing liability because the Complaint alleged only a single, simultaneous transaction.  (Def. Br. 7, n.4).  Plaintiff's response is to cite cases in which an exchange "could be matched with later sales" and to point out that if the CDR Defendants had engaged in a sale on one day and a purchase on another, that *would* have constituted a matching purchase and sale.  (Op. Br. 24, n.15).  That may or may not be correct; but it is not

9

what the CDR Defendants did.  There is no "later sale" alleged in the Complaint.  Plaintiff has no explanation for how a single transaction could give rise to short-swing profits – even if it could be deemed a simultaneous purchase and sale.  In fact, no court, since the enactment of the SEC's rules governing derivative securities in 1991 has held that a single transaction involving derivative securities could give rise to Section 16(b) liability.  As one court said, in holding that "without a pairing of transactions," profits realized from a single transaction were not "swing" profits, and hence could not give rise to 16(b) liability: "It don't mean a thing if it ain't got that swing."  *Portnoy v. Seligman & Latz, Inc.*, 516 F. Supp. 1188, 1200 (S.D.N.Y. 1981).

## Conclusion

For the above reasons and those stated in its opening Memorandum of Law, the CDR Defendants' motion to dismiss should be granted, and the Complaint should be dismissed, with prejudice.

Dated: New York, New York
       August 11, 2005

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: _____/s/  Donald W. Hawthorne____
    Donald W. Hawthorne (DH-2057)
    919 Third Avenue
    New York, New York 10022
    Tel: (212) 909-6000

Attorneys for the CDR Defendants